Charlotte HUNTER, Plaintiff,

v.

COUNTRYSIDE ASSOCIATION FOR THE HANDICAPPED, INC. and Robert Hemphill, Defendants.

No. 88 C 8679.

United States District Court, N.D. Illinois, E.D.

April 6, 1989.

Armand L. Andry, Alan D. Lyons, Oak Park, Ill., for plaintiff.

Stephen G. Seliger, Chicago, Ill., for Countryside Ass'n for the Handicapped, Inc.

## ORDER

BUA, District Judge.

Plaintiff Charlotte Hunter filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against her former employer, Countryside Association for the Handicapped, Inc. ("Countryside"), and her former supervisor at Countryside, Robert Hemphill. This order concerns Countryside's motion to dismiss the two counts in which it is named as a defendant. For the reasons stated herein, Countryside's motion is granted in part and denied in part.

## FACTS

Hunter's complaint contains the following factual allegations, which the court must accept as true for the purpose of resolving this motion to dismiss. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). For some time during 1987, both Hunter and Hemphill were employed by Countryside. Hemphill was Hunter's immediate supervisor. As a Countryside supervisor, Hemphill's duties included calling meetings of the employees he supervised. Countryside authorized Hemphill to conduct these employee meetings outside of the workplace.

On November 9, 1987, Hunter arrived at Hemphill's apartment to attend a Countryside employee meeting which Hemphill had advised her to attend. Upon arriving, however, Hunter discovered she was alone in the apartment with Hemphill. Hemphill then allegedly beat her, raped her, and attempted to force her to commit other deviate sexual acts against her will.

Subsequently, Hunter related the incident to other supervisory staff at Countryside. She requested that Countryside not require her to work with Hemphill, but her request was denied. For the next two weeks, she continued to work under Hemphill's supervision. During that time, Hemphill confronted Hunter and commented on the incident. On November 24, 1987, Hemphill was arrested. Countryside then gave Hemphill a leave of absence, which currently is still in effect. Hunter submitted a written resignation to Countryside on January 11, 1988. Hunter's resignation became effective on January 22, 1988.

Hunter's six-count amended complaint asserts two claims against Countryside. In Count Two, Hunter alleges that as a result of the sexual assault and harassment inflicted by Hemphill, Countryside violated Title VII, which makes it unlawful for any employer "to discriminate against any individual with respect to his [or her] ... terms, conditions or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e-2.[1] In Count Six, Hunter invokes the theory of *respondeat superior*, claiming that Countryside is liable for the intentional torts committed by Hemphill.[2]

Countryside contends that both counts should be dismissed. Regarding Count Two, Countryside first argues that dismissal is warranted because Hunter's Title VII claim was not timely filed. Countryside also argues that Count Two should be dismissed on the merits because Hunter is not entitled to any type of relief available under Title VII. With respect to Count Six, Countryside maintains that if Hunter's Title VII claim is dismissed, there is no federal jurisdiction over the pendent state claim in Count Six. In addition, Countryside argues that it cannot be liable under the

---

**1.** Sexual harassment of an employee by an employer forms a basis for a Title VII claim where such harassment is "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2406, 91 L.Ed. 2d 49 (1986) (*citing Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982)). Under an agency theory, an employer can be liable under Title VII for the sexual harassment of its lower level employees by its supervisors. *See Meritor*, 106 S.Ct. at 2408; *North v. Madison Area Assoc. For Retarded Citizens—Development Centers Corp.*, 844 F.2d 401, 407 (7th Cir.1988).

**2.** In Counts Three, Four and Five, Hunter alleges that Hemphill committed the torts of assault, battery, and intentional inflection of emotional distress.

theory of *respondeat superior* set forth in Count Six because Hemphill's intentional torts were not committed in the course of his employment with Countryside. Therefore, Countryside argues that Count Six fails to state a claim.

## DISCUSSION

### I. *Count Two*

A. The 90–day Filing Requirement Under Title VII

 Section 706 of the Title VII requires a Title VII claimant to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurs. 42 U.S.C. § 2000e–5(f)(1). If the EEOC declines to pursue the claimant's charge, the EEOC must notify the claimant, and the claimant may then file a civil action in federal court. *Id.* The claimant must file his federal action within 90 days of receiving his "right-to-sue" notice from the EEOC. *Id.* The 90–day filing requirement is not a jurisdictional prerequisite to bringing suit in federal court. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 2395 n. 3, 76 L.Ed.2d 628 (1983). Rather, the 90–day limit is akin to a statute of limitations. *Id.*

Countryside points out that although Hunter received her right-to-sue notice from the EEOC on June 14, 1988, she did not file the instant complaint until October 12, 1988. Therefore, Hunter failed to file her complaint within 90 days of receiving her right-to-sue notice. Countryside argues that as a result, Hunter's Title VII claim is time-barred. The court, however, finds that under the special procedural circumstances in this case, the imposition of an absolute 90–day filing limit on Hunter's Title VII claim is not warranted.

Hunter filed her original complaint in this court in November 1987. At a status hearing on January 14, 1988, Hunter's counsel informed the court that it had not yet received a right-to-sue letter from the EEOC. Therefore, this court dismissed the original complaint and granted Hunter leave to file an amended complaint under

the same docket number upon receipt of the right-to-sue letter.

Hunter received the right-to-sue notice on June 14, 1988. On August 30, 1988, Hunter filed a motion for leave to file an amended complaint with a copy of the amended complaint attached to the motion. A hearing on the motion to amend was held on September 27. The court, reconsidering its prior order of January 14, ruled that instead of filing an amended complaint, Hunter should file a new complaint under a new docket number. The court told Hunter's counsel to indicate on the face of the newly filed complaint that a prior action had been filed. By doing so, Hunter would ensure that the Clerk of the Court would reassign the case to this court. The court granted Hunter 14 days in which to file a new complaint. Hunter filed the complaint —which currently is before the court—on October 12, 1988, the 15th day after the September 27 hearing.

Under these circumstances, the court finds Hunter's Title VII claim is not time-barred. The 90–day filing requirement is not absolute; like a statute of limitations, it is subject to equitable principles such as waiver, estoppel, and equitable tolling. *Anooya v. Hilton Hotels Corp.,* 733 F.2d 48, 49 (7th Cir.1984). In the instant case, the doctrine of equitable tolling applies to prevent Hunter's Title VII claim from being time-barred. The 90–day period began to run upon Hunter's receipt of the EEOC notice on June 14, 1988. *St. Louis v. Alverno College,* 744 F.2d 1314, 1316 (7th Cir.1984). On August 30—77 days after receiving the EEOC notice—Hunter filed her motion for leave to file an amended complaint. Hunter filed that motion based on a good faith belief that she was proceeding in proper fashion. She was not sleeping on her rights or failing to pursue her claim diligently. Therefore, the filing of her motion to amend and accompanying amended complaint was sufficient to toll the 90–day period. *Brown v. Commonwealth Edison Co.,* 647 F.Supp. 1456, 1458 (N.D.Ill.1986), *aff'd,* 852 F.2d 932 (7th Cir. 1988). Moreover, in light of the fact that this court reconsidered its prior position on the amendment of the complaint and gave

Hunter an additional 14 days to file a new complaint under a new docket number, the court's September 27 order equitably extended the tolling of the 90–day period to October 11, 1988. The 90–day period did not begin to run again until October 12, the day Hunter filed the complaint currently before the court. Due to equitable tolling, October 12 represents the 78th day of the 90–day period. Therefore, Hunter's Title VII claim is not time-barred.

### B. Relief Requested

Hunter's Title VII claim contains a request for four separate forms of relief: punitive damages, compensatory damages, attorneys' fees, and "such further equitable and injunctive relief as the court deems appropriate and necessary to correct the violations complained of ..." In response to these requests, Countryside argues that damages are not available under Title VII. Countryside further contends that Hunter's prayer for equitable and injunctive relief is vague and unsubstantiated. Therefore, Countryside urges this court to dismiss Hunter's Title VII claim on the grounds that it fails to state a claim upon which this court could grant any relief available under Title VII.

■■■ Title VII provides that where a court finds an unlawful employment practice exists, "the court may enjoin ... such ... practice and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g). Interpreting this language,

the Seventh Circuit has held that "... no damages are available under Title VII. If Congress wishes to amend the provisions of Title VII to provide a remedy for damages, it can do so. Until then, this court may only enforce the statute as written, and as currently written Title VII does not contemplate damages." *Bohen v. City of East Chicago,* 799 F.2d 1180, 1184 (7th Cir.1986). *See also Hale v. Marsh,* 808 F.2d 616, 620 (7th Cir.1986); *Germane v. Heckler,* 804 F.2d 366, 370 (7th Cir.1986). Under this interpretation of Title VII, Hunter's prayer for compensatory and punitive damages under Title VII cannot survive. Therefore, her requests for such relief are dismissed.[3]

■■■ Nevertheless, the court finds that Hunter's request for equitable relief is sufficient to permit Hunter's Title VII claim to withstand Countryside's motion to dismiss. Countryside argues that the complaint should be dismissed because it does not clearly set forth the specific equitable relief Hunter seeks to obtain. However, in the context of a motion to dismiss, this court must read the complaint in the light most favorable to Hunter. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Reading the complaint in that light, the court construes Hunter's prayer for relief as requesting the equitable remedies of reinstatement with back pay[4] or, alternatively, front pay. The former is clearly available under the plain language of Title VII. *See* 42 U.S.C. § 2000e–5(g). The latter, front pay, although not expressly authorized by Title VII, has been held to be recoverable under Title VII.[5] *See*

---

**3.** Hunter contends that Section 708 of Title VII, 42 U.S.C. § 2000e–7, allows recovery of damages on a Title VII claim. This argument is ridiculous. Section 708 merely provides that a Title VII plaintiff retains the right to pursue any state law remedies and claims which do not conflict with Title VII. Nothing in Section 708, however, can be construed as allowing a plaintiff to seek state law remedies based on his Title VII claim. Plaintiffs must seek their state law remedies based on some state law cause of action.

**4.** Although it consists of a monetary award, back pay is considered an "equitable" remedy.

*See Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1299 (7th Cir.1987).

**5.** Front pay, which represents the amount of compensation necessary for plaintiff to reestablish her rightful place in the job market, is awarded in lieu of reinstatement. *Thorne,* 802 F.2d at 1137; *Henry v. Lennox Industries, Inc.,* 768 F.2d 746, 753 (6th Cir.1985); *Fadhl,* 741 F.2d at 1167. This court has not found any Seventh Circuit decision addressing whether front pay is an available remedy in a Title VII action. However, the Seventh Circuit has found front pay awards appropriate under the Age Discrimination in Employment Act of 1967, 29

**238**

*Thorne v. City of El Segundo,* 802 F.2d 1131, 1137 (9th Cir.1986); *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985); *Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 889 (3d Cir.1984); *Fadhl v. City and County of San Francisco,* 741 F.2d 1163, 1167 (9th Cir.1984); *White v. Carolina Paperboard Corp.,* 564 F.2d 1073, 1091 (4th Cir.1977).

■ Countryside further argues, however, that even if Hunter's prayer for relief sufficiently sets forth a request for equitable remedies, the complaint contains no factual basis upon which the court could grant such remedies. Countryside maintains that the remedies of reinstatement, back pay and front pay are only available where plaintiff has been discharged, and Hunter does not allege that she was discharged.

The court rejects the argument that Hunter fails to allege she was discharged. Count Two of Hunter's complaint contains the allegation that she was "... unable to continue her employment with ... Countryside ... because of the acts committed against her by ... Hemphill ... and the failure to allow [her] to cease working with ... Hemphill." This allegation is sufficient to state a constructive discharge claim. Constructive discharge in a Title VII action is established where plaintiff shows that "the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980).[6] Hunter's allegations, construed in the light most favorable to her, aver that she felt compelled to resign due to the sexual harassment she allegedly received, and that her feeling was reasonable. Therefore, based on a constructive discharge theory, Hunter's complaint states a claim on which she can recover the equitable remedies available under Title VII.

■ Countryside's final argument with respect to Count Two asks the court to treat its motion as requesting summary judgment. Countryside maintains that even if Hunter's complaint states a claim for equitable remedies under Title VII, facts outside the complaint show that Hunter cannot recover on her Title VII claim. Specifically, Countryside notes that in Hunter's handwritten resignation letter to Countryside, she does not claim that the alleged rape is the cause of her resignation. Instead, she informed Countryside that she had taken a new job. Countryside argues that Hunter's letter establishes that she was not constructively discharged.

This argument is without merit. While the resignation letter may be probative on the issue of whether Hunter resigned involuntarily, it does not conclusively establish that Hunter was not constructively discharged. Since Hunter may have omitted reference to the alleged rape for a variety of reasons, Countryside is not entitled to judgment as a matter of law. Therefore, with the exception of Hunter's requests for punitive and compensatory damages, which are dismissed, Count Two survives Countryside's motion to dismiss and alternative motion for summary judgment.

U.S.C. § 621 *et seq. See McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

**6.** Some circuits have held that in order to establish a constructive discharge under Title VII, plaintiff must also show that the employer had the intent to force the employee to resign. *See EEOC v. Federal Reserve Bank,* 698 F.2d 633, 672 (4th Cir.1983); *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981). However, the majority of circuits, in accordance with the Fifth Circuit in *Bourque,* have not required the employer to have such an intent. *See Derr v. Gulf Oil Corp.,* 796 F.2d 340, 343–44 (10th Cir.

1986); *Lojek v. Thomas,* 716 F.2d 675, 681 & n. 13 (9th Cir.1983); *Pena v. Brattleboro Retreat,* 702 F.2d 322 (2d Cir.1983); *Nolan v. Cleland,* 686 F.2d 806, 812–814 & nn. 16–17 (9th Cir. 1982); *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982); *Henson v. City of Dundee,* 682 F.2d 897, 907 (11th Cir.1982); *Clark v. Marsh,* 665 F.2d 1168, 1173–76 & n. 8 (D.C.Cir.1981). Although the Seventh Circuit has not yet addressed this issue, district courts in this circuit have adopted the majority view. *See Thames v. Maurice Sporting Goods,* 686 F.Supp. 208, 212 n. 10 (N.D.Ill.1988); *Bailey v. Binyon,* 583 F.Supp. 923, 928–29 (N.D.Ill.1984). This court also adopts the majority position.

## II. *Count Six*

In Count Six, Hunter alleges that Countryside is liable for the injuries she suffered from the torts committed by Hemphill because Hemphill's actions "were ... taken while acting as an agent of ... Countryside" and because "[Countryside] is liable for the acts of its supervisors or agents." These allegations purport to state a claim against Countryside based on a theory of *respondeat superior*.

 To hold an employer liable for the intentional torts of his employees under the doctrine of *respondeat superior*, plaintiff must show that the torts were committed in furtherance of the employment. *Hunter v. Allis–Chalmers Corp., Engine Division*, 797 F.2d 1417, 1421 (7th Cir. 1986). "The tortfeasing employee must think, however misguidedly, that he is doing the employer's business in committing the wrong." *Id.* at 1421–22. *See also Lancaster v. Norfolk & Western Railway*, 773 F.2d 807, 817 (7th Cir.1985). In the instant case, Hemphill's alleged sexual assault can in no way be interpreted as furthering Countryside's business. *See Padilla v. d'Avis*, 580 F.Supp. 403, 409 (N.D.Ill. 1984) (employee's sexual assault of plaintiff-patient not committed in the course of the business of defendant, a city health department facility). Hemphill's alleged attack was committed "solely for the benefit of the [employee]." *Hoover v. University of Chicago Hospitals*, 51 Ill.App.3d 263, 267, 9 Ill.Dec. 414, 418, 366 N.E.2d 925, 929 (1985). Therefore, Count Six fails to state a claim for *respondeat superior* liability.[7] Accordingly, it must be dismissed.

## CONCLUSION

Countryside's motion to dismiss is granted in part and denied in part. With respect to Count Two, Countryside's motion is granted only to the extent that it requests this court to dismiss Hunter's prayer for punitive and compensatory damages under Title VII. As to the remainder of Count Two, Countryside's motion is denied. Regarding Count Six, Countryside's motion to dismiss is granted.

IT IS SO ORDERED.

---

**7.** Hunter argues that under *Horn v. Duke Homes, Division of Windsor Mobile Homes, Inc.*, 755 F.2d 599 (7th Cir.1985), Countryside is liable for the torts of its supervisory personnel such as Hemphill. *Horn*, however, is inapplicable to the issue of whether an employer is liable for the torts of its supervisory employees under the theory of *respondeat superior*, as is alleged here. *Horn* held only that under Title VII, an employer is strictly liable for the discriminatory acts of its supervisory personnel which violate Title VII. *Id.* at 604. Nothing in *Horn* purports to abrogate well-established law concerning liability under *respondeat superior*. Moreover, after the Supreme Court's decision in *Meritor Savings Bank, supra*, the Seventh Circuit revised the position it took in *Duke Homes*. The court now requires courts in this circuit to look to agency principles for guidance in determining employer liability under Title VII. *North v. Madison Area Assoc. For Retarded Citizens—Development Centers Corp.*, 844 F.2d 401, 407 (7th Cir.1988).