Hugo DE LA ROSA, Daniel Mendoza De La Rosa, Daniela Mendoza De La Rosa, Jose E. Mendoza, Agustin Cavazos, Oziel Mendoza Montes, Reynaldo Vega, Jose Alejandro Tijerina, Oziel Mendoza Balderas, Bilialdo Garcia, Juan E. Galvan, David Colunga, and Juan Vargas, Plaintiffs,

v.

NORTHERN HARVEST FURNITURE, Cambridge Mills Furniture, Inc., Rosie Sanqunetti, and John McGinn, Jr., Defendants.

No. 01–2160.

United States District Court,
C.D. Illinois,
Urbana Division.

Sept. 4, 2002.

Steven A. Mange, Paul Strauss, Marni Willenson, Miner, Barnhill & Galland, Chicago, IL, A. Lou Benassi, Benassi & Benassi, PC, Peoria, IL, for plaintiffs.

Lorna K. Geiler, Meyer Capel, PC, Champaign, IL, S. Craig Smith, Asher Smith & Isaf, Paris, IL, for defendants.

## ORDER

BERNTHAL, United States Magistrate Judge.

In July 2001, Plaintiffs Hugo De La Rosa, Daniel Mendoza De La Rosa, Daniela Mendoza De La Rosa, Jose E. Mendoza, Agustin Cavazos, Oziel Mendoza Montes, Reynaldo Vega, Jose Alejandro Tijerina, Oziel Mendoza Balderas, Bilialdo Garcia, Juan E. Galvan, David Colunga, and Juan Vargas filed a Second Amended Complaint (# 21) against Defendants Northern Harvest Furniture, Cambridge Mills Furniture, Inc., Rosie Sanqunetti, and John McGinn, Jr., alleging violations of Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.*), the Fair Labor Standards Act (hereinafter "FLSA") (29 U.S.C. § 201 *et seq.*), and the Illinois Minimum Wage Law (820 ILCS 105/1 *et seq.*). In May 2002, Defendants filed a Motion To Compel Production of Documents (# 47). The Court **DENIES** the Motion To Compel (# 47).

### I. Discussion

Plaintiffs have objected to Defendants request to produce the following:

*REQUEST FOR PRODUCTION NO. 1:* Provide a complete copy of documents confirming you were legally authorized to

work in the United States during the time you claim to have worked for the defendant(s).

*REQUEST FOR PRODUCTION NO. 2:* Provide a complete copy of documents confirming you are legally authorized to work in the United States at this time.

Defendants argue that this information is relevant to Plaintiffs' claim for post-termination backpay as a component of damages and that the relevance of the information outweighs any potential chilling effect that might occur as a result of requiring Plaintiffs and similarly situated individuals to produce the documents. Defendants base their argument that the information is relevant on *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board,* —— U.S. ——, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), which foreclosed the NLRB from awarding backpay to an undocumented alien who had never been legally authorized to work in the United States but who still resided in the United States. *See also Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 902–03, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (the NLRB may not award post-discharge back pay to undocumented workers who have left the United States and cannot lawfully return).

Plaintiffs counter with several arguments, including the following: (1) the reasoning in *Hoffman* applies only to cases involving the NLRB, and does not apply to the claims involved in this case, which are based on Title VII, the FLSA, and the Illinois Minimum Wage Law; (2) *Hoffman* should not be applied here because Defendants are also at fault for failing to verify the immigration status of the employees; (3) even if their immigration status is relevant, the chilling effect of requiring Plaintiffs to provide documents confirming immigration status outweighs any relevance; and (4) even if immigration status is relevant to the award of backpay, the time periods for which Defendants request documentation are not relevant to the determination of post-discharge backpay.

In *Hoffman,* the Court addressed the limits on the NLRB's discretion to award remedies to undocumented workers who remain in the United States, and determined that the

NLRB had overstepped its bounds when it awarded backpay to those workers. Specifically, the Court stated as follows:

> We find, however, that awarding backpay to illegal aliens runs counter to policies underlying IRCA [ (Immigration Reform and Control Act of 1986) ], policies that Board has no authority to enforce or administer. Therefore, as we have consistently held in like circumstances, the award lies beyond the bounds of the Board's remedial discretion.

*Hoffman,* —— U.S. at ——, 122 S.Ct. at 1283. Thus, the Supreme Court focused on whether the NLRB had authority to award post-termination backpay when that remedy interfered with the policies of another statute— the IRCA—which the NLRB had no authority to enforce or administer.

The remedial language of the National Labor Relations Act (hereinafter "NLRA") is very similar to Title VII's language. Section 10(c) of the NLRA authorizes the Board to remedy the effects of unfair labor practices by ordering violators "to take such affirmative action, including ... backpay, as will effectuate the policies of th[e] Act ...." (29 U.S.C. § 160(c).) The backpay remedy under the Act is designed to restore "the situation, as nearly as possible, to that which would have obtained, but for the illegal discrimination." *Del Rey Tortilleria, Inc. v. N.L.R.B.,* 976 F.2d 1115, 1118 (7th Cir.1992), *citing Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). Similarly, Title VII provides that "the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g) (1982 ed.). The Seventh Circuit has considered this language in the context of Title VII's remedial goals and the Supreme Court's rulings on the issue of backpay and concluded that backpay is presumptively appropriate in a Title VII case. *E.E.O.C. v. O & G Spring and Wire Forms Specialty Co.,* 38 F.3d 872, 880 (7th Cir.1994), *citing Albemarle v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975);

*Horn v. Duke Homes,* 755 F.2d 599, 606 (7th Cir.1985). It may only be denied for reasons which "if applied generally, would not frustrate the central statutory purposes of eradicating discrimination ... and making persons whole." *Id.* Coupled with the authority of a federal court as opposed to the NLRB, the Court cannot conclude at this time that *Hoffman* is dispositive of the issues raised in the motion to compel and Plaintiffs' response.

Nevertheless, the Court need not address those issues at this time because the information that Defendants are requesting here is clearly *not* relevant to the question of backpay. When appropriate, post-termination backpay would cover the period after an employee is terminated and before the employer offers reinstatement. *See Del Rey,* 976 F.2d at 1117. Here, Plaintiffs allege that their employment was terminated on March 16, 2001. Defendants apparently offered to reinstate Plaintiffs in their jobs a few days prior to August 24, 2001. As a result, the documentation requested in Request for Production No. 1—for confirmation of immigration status *during the time* Plaintiffs were employed by Defendants—is not relevant to the question of post-termination backpay. Likewise, the documentation requested in Request for Production No. 2—for confirmation of *current* immigration status—is not relevant because Defendants apparently offered to reinstate Plaintiffs a few days prior to August 24, 2001. The only period for which immigration status *might* potentially be relevant is the period from March 16, 2001, to August 24, 2001.

Accordingly, the Court denies Defendants' Motion To Compel (# 47) Plaintiffs to respond to RTP Nos. 1 and 2.

## II. Summary

For the reasons stated above, the Court **DENIES** Defendants' Motion to Compel (# 47).