**Edith LOVE, Plaintiff-Appellee,**

v.

**WAUKESHA JOINT SCHOOL DISTRICT # 1, BOARD OF EDUCATION, Defendant-Appellant.**

**No. 76–2295.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1977.

Decided Aug. 16, 1977.

Michael R. Wherry, Milwaukee, Wis., Robert M. Hesslink, Jr., Madison, Wis., Gerald T. Janis, City Atty., Waukesha, Wis., for defendant-appellant.

Curry First, Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT and BAUER, Circuit Judges, and GRANT,* Senior District Judge.

SWYGERT, Circuit Judge.

This is an appeal from a grant of summary judgment in favor of plaintiff Edith Love in a suit brought against defendant Waukesha Joint School District # 1, Board of Education, charging discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The suit, filed in the district court for the Eastern District of Wisconsin, sought to recover damages for the denial of sick leave benefits for plaintiff's pregnancy-related absence from her teaching position.

Under section 19.01 of the collective bargaining agreement then in effect between the School District and the Education Association of Waukesha, teachers received ten days of paid sick leave per year, the unused portion of which could accumulate up to one hundred twenty days. Five days per year of these ten were permitted for illness or death of a family member and two days per year were allowed for "personal business." Under the contract a separate provision for leaves of absence required maternity leave to "conform to legal requirements."

In January 1973 plaintiff teacher informed the defendant school board that she was pregnant and had been advised by her doctor to take a leave of absence. Her doctor sent a letter to the Board describing her condition and explaining that because of the "high risk" nature of the pregnancy,[1] it required an "inactivity nearing disability."[2] Plaintiff requested the paid sick leave which she had accumulated be used for this period. This request was denied by a 6–2 vote of the Board, but she was granted an unpaid leave.

Plaintiff did not work between February 6 and March 26, 1973. After that she worked half-days until April 30 when she resumed teaching full time. During this entire period she had unused accumulated sick leave.

The district court on September 27, 1976 granted summary judgment finding that there were no issues of material fact and that the denial of paid sick leave discriminates against female employees in violation of Title VII. The court, relying on an analysis of Title VII supported by the decisions of other circuits,[3] distinguished *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), grounded in a fourteenth amendment equal protection rationale, as not limiting an interpretation of

---

* The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Due to the physical conditions of both plaintiff and her husband, pregnancy was nearly impossible. Plaintiff had been trying for some time to become pregnant and a second pregnancy was highly unlikely to occur.

2. The doctor restricted plaintiff's activities until the sixteenth week of pregnancy in order to assure that her pregnancy was secure.

3. *Communications Workers of America, AFL–CIO v. American Telephone and Telegraph Co., L.L. Dept.,* 513 F.2d 1024 (2d Cir. 1975); *Wetzel v. Liberty Mutual Insurance Co.,* 511 F.2d 199 (3d Cir. 1975), *aff'd,* 372 F.Supp. 1146

Title VII. It went on to find that, based upon an interpretation of "discrimination" in section 2000e–2(a) and the policy guidelines of the Equal Employment Opportunity Commission (EEOC),[4] there was "no rational distinction to be drawn between pregnancy-related disabilities and those arising from any other cause" which would justify the denial of paid sick leave in such cases. The court concluded that as a matter of law the Board had discriminated against plaintiff on account of sex.

The appellant school Board's argument is twofold: (1) that under the United States Supreme Court's recent decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), there was as a matter of law no discrimination in this case; and (2) that even if Gilbert does not require dismissal, the tenth amendment prevents the application of Title VII to municipalities.

We turn first to the latter argument and find that we must reject it. Defendants cite *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in support of their contention that Title VII cannot be enforced against states and state subdivisions. In that case the Supreme Court held that the tenth amendment was violated by the 1972 amendments to the Fair Labor Standards Act. The amendments extended minimum wage and overtime provisions of that Act to states and municipalities. The Court found that these requirements would jeopardize the ability of the states to function as separate and autonomous units by infringing upon their ability to establish their own internal governmental policies.

Defendants assert that this reasoning applies in the instant case should we find that Title VII requires payment of pregnancy benefits. Their contention, however, was answered by *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), in which the Supreme Court held that the principle of state sovereignty embodied in the eleventh amendment and the amendment itself are limited by the enforcement provisions of section 5 of the fourteenth amendment, Title VII being an exercise of this power. Similarly, state power reserved by the tenth amendment would also be limited by the fourteenth amendment and, thus, the requirements of Title VII. In their attempt to avoid the possibility of payment of pregnancy benefits, the Board would have us exempt an entire class of employers from the requirements of Title VII a class specifically included by the 1972 amendments to the Civil Rights Act of 1964. We cannot say that such an inclusion was beyond the enforcement power granted to Congress by section 5 of the fourteenth amendment.

We turn now to the substantive question of allowing the use of accumulated sick leave for absences due to pregnancies. When the district court granted summary judgment in this case, the Supreme Court had not yet decided *General Electric Co. v. Gilbert, supra.* The court could not know that the EEOC guidelines and decisions of other circuits distinguishing *Aiello* would be annihilated in one sweep of the Supreme Court's hand. There was, thus, no chance for the parties to develop the issues further than the pleading stage. Because of this the case should be remanded to the district

(W.D.Pa.1974); *Vineyard v. Hollister Elementary School District,* 64 F.R.D. 580 (N.D.Cal. 1974).

4. Section 1604.10 of the guidelines states:
   Employment policies relating to pregnancy and childbirth.
   \* \* \* \* \* \*
   (b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

court for proceedings in light of *Gilbert* and to develop the peculiar facts of the case.

The fact of a significant additional cost in order to provide pregnancy benefits was crucial to the outcome of *Gilbert*. The Court found that such significant additional costs provided a reasonable basis to exclude pregnancy from coverage. The Board in the instant case claims that the cost of providing paid sick leave would be increased drastically by allowing the days to be used for pregnancy-related illnesses. This, however, should be shown by concrete evidence, and not mere speculation or contention. There may be only minimal, or no extra cost to the Board if, for instance, all or most sick days were generally used by teachers before they reach the point where they cease to accumulate. If such were the case, potential increase in cost could not be considered to be a reasonable basis for exclusion of sick pay coverage for pregnancy.

There also exists the possibility that under interpretation of the collective bargaining contract, the type of medical problem suffered by plaintiff would be considered a "personal illness" rather than a "maternity leave." The fact that two members of the Board voted to allow her to receive sick pay for this period is some indication of this possibility.

Finally, *Gilbert* appears to leave open the possibility of proving discrimination by showing the discriminatory effect of a facially neutral plan. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The Court in *Gilbert* found that such a showing had not been made in that case; in the instant case, however, the proceedings had not gone far enough to reach that point because it was decided on summary judgment. Plaintiffs, therefore, should have a chance to make a showing of discriminatory effect if it exists.

The order granting summary judgment for the plaintiff is reversed and the case remanded for proceedings consistent with this opinion.