Karen I. ROBINSON, Plaintiff,

v.

CITY OF LAKE STATION, Defendant.

Civ. No. H 83–396.

United States District Court,
N.D. Indiana,
Hammond Division.

March 19, 1986.

Ruth M. Hennage, Portage, Ind., for plaintiff.

James A. Greco, Merrillville, Ind., for defendant.

## ORDER

MOODY, District Judge.

On February 4, 1986, a bench trial commenced in this action, brought by plaintiff Karen I. Robinson, against defendant City of Lake Station. The plaintiff alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Both parties were represented by counsel. Having examined the entire record and having determined the credibility of the witnesses after viewing their demeanor and considering their interests, the Court hereby renders the following Findings of Fact and Conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### I.

### *Findings of Fact*

Plaintiff initiated her case by filing on June 15, 1981 a charge with the Equal Employment Opportunity Commission pursuant to 42 U.S.C. § 2000e *et seq.* On May 24, 1983, the EEOC terminated its processing of plaintiff's charge and issued her a Notice of Right to Sue. The plaintiff then filed a complaint in this court on June 23, 1983.

The City of Lake Station hired Karen Robinson on September 18, 1979. She was hired by Isaac "Red" Loving and was assigned to the job of reading water meters under the supervision of Jim Barnes, the General Foreman. The plaintiff received no oral or written reprimands with regard to her performance as a meter reader; nor was she informed of any customer complaints about her work. Her supervisors never complained or commented to the plaintiff about poor work quality, attendance, or excessive talking on the job.

On January 16, 1980, Jim Barnes hand-delivered to the plaintiff a letter he had signed (Exhibit A) informing the plaintiff that, due to a lack of funds, she would be laid off as of that date. In this letter to Robinson, the City notified her that she would be contacted if funds became avail-

able. In March of 1980, Karen Robinson, who had not been rehired by the City, went to the office of George J. Boby, the General Superintendent of Public Works for the City of Lake Station. She spoke to Boby about the possibility of being rehired by the City and indicated to Boby that she had previous employment experience in a city sewer department. Although the plaintiff's original employment application was lost at some time after she filed it with the City of Lake Station in 1979, it too indicated that the plaintiff had previous work experience in the sewer department in the City of Portage, Indiana. At the March meeting with Boby, Robinson expressed an interest in working in the sewer department to which Boby responded that he did not hire women in the sewer department and made a joking comment as to whether Robinson was a "women's libber." She was not rehired at this time.

In May of 1980, Robinson returned to Boby's office to express an interest in being rehired by the City. She indicated her willingness to perform any type of work available and reminded Boby of her field experience with the City of Portage. After this meeting, the City rehired Robinson to mow grass. She operated a riding lawn mower and a hand-pushed lawn mower for two or three weeks and was then transferred to the job of yard attendant at the City dump. Boby told Robinson that she was being assigned to the position of yard attendant because he had discovered record-keeping discrepancies there and needed someone "more competent" to perform the yard attendant duties. The plaintiff performed the yard attendant duties until July 31, 1980 when Boby orally informed her that she was again being laid-off because of a lack of funds and that the regular yard attendant was returning to work after his vacation.

Subsequent to the time Robinson was laid off in July of 1981, she contacted the City on several occasions to express her continued interest in employment with the City. She also engaged the aid of her political representative, then Councilman Don Miller, to request the City officials to rehire her. Miller met with Boby on Robinson's behalf at Boby's office and told Boby that Robinson was willing to take any position and requested that Boby rehire her. Boby then told Miller that he would not hire females for work on the garbage trucks because of a lack of bathroom facilities and unpleasant sanitary conditions.

Subsequent to the plaintiff's layoff of July 31, 1980, the defendant has hired nine male employees to perform "field work" for the City of Lake Station. The defendant also rehired for field work a male employee with one week less seniority than the plaintiff. The term "field work" describes outdoor work as opposed to indoor office or clerical work.

The defendant had no formal qualifications or formal job descriptions by which to assess the qualifications of its appplicants for field work positions. The City relied instead on the judgment of Boby to determine whether a particular applicant could fulfill the needs of a particular department. The department foreman would inform Boby of job openings and Boby decided upon a suitable person among the pending applicants. Boby had ultimate responsibility for hiring and firing City employees.

All ten employees the City hired for field work after Robinson's lay-off in July of 1980 were listed as "laborers" on their payroll records. Four of them were placed into a general "labor pool", five others were hired exclusively for work on the city garbage trucks, and one was hired exclusively to work as yard attendant at the city dump.

Employees in the labor pool were expected to perform mechanical and repair duties in any of the five departments under Boby's supervision. Because this often requires the laborers to repair city vehicles or assume on short notice, jobs in a different department, applicants with previous relevant work experience or abilities received hiring preference over applicants without training or skills. For example, of the four employees who were placed into the labor pool after Robinson's second lay-off, one

was previously a welder, one was a mechanic and one had received training through the adult CETA (Comprehensive Employment Training Act, 29 U.S.C. § 801 *et seq.*) program and owned his own set of mechanics' tools and one had previously operated a water treatment facility. The fourth male employee, Steve Bogdon, was hired into the labor pool because Boby knew him personally and considered him especially ambitious and because he had a high school science background which would make him a good candidate for water treatment certification school in the future.

Although the plaintiff did not have significant mechanical skills or training, she did have previous experience as a laborer in the sewer department for the City of Portage. While working for the City of Portage, she gained experience in checking lift stations, painting, mowing grass, assisting in mechanical repairs on city vehicles, flushing sewer lines, and inspecting the laying of sewer lines. This work is similar to the type of work a laborer for the City of Lake Station would perform but did not prepare Robinson to perform the work of a skilled mechanic or welder.

The remaining six male employees who were hired after the plaintiff was laid off in July of 1980 did not possess any particular skills. Nor did the City of Lake Station formally specify job qualifications for the jobs these workers were hired to fill, one yard attendant at the city dump and five garbage truck packers. Robinson had previously performed the yard attendant duties and in doing so, never received a written or oral reprimand. Moreover, George Boby never heard any complaints or negative reports of Robinson's work at the dump until after this cause of action was filed and the City began investigating for reasons it had refused to rehire Robinson. In April of 1981, the regular yard attendant was replaced by Ray Wright, a male employee who weighed 600 pounds and was practically immobile. He had no special qualifications or relevant work experience and George Boby could not offer any explanation for hiring Ray Wright instead of rehiring Karen Robinson.

The position of garbage truck packer involves riding on the back of a garbage truck and unloading the contents of cans into the truck as the truck travels along its route through the city. This job required no extraordinary mechanical skills. It seems that the only qualification was the ability to lift trash cans and empty them into the truck quickly enough so as not to delay the truck in completing its scheduled route. Although several witnesses gave their subjective assessment that the trash cans were "heavy", only one witness with personal knowledge was asked to give an objective estimate of the weight of the garbage cans. This witness testified that the cans typically weighed between 25 and 70 pounds each.

Boby relied on his own judgment to determine whether a job applicant could adequately perform the garbage truck packer job. Boby took into consideration the applicant's height, weight, age, physical appearance and previous employment in deciding whether to hire that applicant. Of the four male employees hired to work as garbage truck packers since Robinson was laid off, three were "good-sized men" whom Boby considered qualified because of their size and for the physically demanding jobs they had previously held. One employee the defendant hired to work on the garbage truck, however, weighed 130 pounds and was only five feet two inches tall when Boby hired him. This employee had no particular skills and was not given any sort of physical test to determine whether he was qualified as a garbage truck packer despite his size. By objective standards, the plaintiff would have been more qualified as a garbage truck packer than he.

The defendant asserts that it did not rehire Robinson because she was unreliable, arrived at work late and left early, and practiced her religion on the job. However, George Boby, the individual who had ultimate authority over hiring decisions, was not aware of any of such problems until after Robinson had already filed suit and

the defendant searched for *post hoc* reasons to support a decision not to rehire Robinson. Indeed, the problem of Robinson "arriving late and leaving early" was not discovered until the very evening before this trial when the defendant uncovered several of the plaintiff's employee time cards from 1980.

George Boby himself testified that he did not remember receiving any oral complaints about the plaintiff's work as yard attendant at the dump and had no knowledge of any complaints at all with regard to the plaintiff. He testified that the sole reason for laying off the plaintiff from the yard attendant job in July of 1980 was a lack of funds and the return of the regular yard attendant from vacation leave.

Although other employees doing field work testified of the plaintiff's talking and occurrences of preaching on the job, Boby had no knowledge of these complaints when he made the decision not to rehire the plaintiff. Therefore, these problems could not have been the defendant's reason for not rehiring the plaintiff as the defendant's hiring agent, George Boby, was not aware that these problems existed when he made his decision not to rehire Robinson.

From Boby's testimony at trial it was apparent that the reason he did not hire the plaintiff as a garbage truck packer was his subjective opinion that she could not perform the demanding physical tasks required of garbage truck packers. Boby testified that he did not consider Robinson capable of adequately performing the garbage truck packer job. But for Boby's anomalous decision to hire a five foot two inch, 130 pound male garbage truck packer, this subjective evaluation of Robinson's ability might be more acceptable as a legitimate non-discriminatory reason for refusing to rehire Robinson. The small male garbage packer had previously received experience working for the defendant through the adult CETA program but the trial testimony did not reveal the nature or length of the work experience he received through CETA programs.

## II.

### Conclusions of Law

The Court has jurisdiction over the subject-matter of this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The Court has jurisdiction over the parties. Defendant City of Lake Station, is an employer within the meaning of Title VII, 42 US.C. § 2000e(b). *Love v. Waukesha Joint School Dist.,* 560 F.2d 285 (7th Cir.1977).

■ This is a claim under Title VII for employment discrimination on the basis of sex. Although she alleged a pattern or practice of discrimination, the plaintiff failed to prove a "repeated" or "generalized" denial of rights as required to prevail on a "pattern or practice" theory of discrimination. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358–60, 97 S.Ct. 1843, 1866–67, 52 L.Ed.2d 396 (1977). Robinson failed to present sufficient evidence to prove by a preponderance that sexual "discrimination was the [defendant's] standard operating procedure—the regular rather than the unusual practice." 431 U.S. at 336, 97 S.Ct. at 1855. The plaintiff did not present evidence sufficient to proceed on the theory of a discriminatory pattern or practice.

■ Robinson did not establish the elements of a retaliatory discharge in violation of Title VII, 42 U.S.C. § 2000e–2(a)(1). She failed to show that the City of Lake Station would have rehired her "but for" her previous participation in proceedings under Title VII. *Klein v. Trustees of Indiana University,* 766 F.2d 275, 280 (7th Cir.1985); *McCluney v. Jos. Schlitz Brewing Co.,* 728 F.2d 924, 928 (7th Cir.1984).

■ To prevail in an action alleging sex discrimination in employment the plaintiff must establish by a preponderance of the evidence that the employer intended to discriminate against her because of her gender. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The ultimate question in an employment discrimination suit is whether the employer intentionally discriminated against the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Though often described as a "factual inquiry", *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481, the ultimate fact of discrimination involves both a finding of fact and conclusion of law. *DeLesstine v. Fort Wayne State Hospital and Training Center,* 682 F.2d 130, 133 (7th Cir.1982). To decide the ultimate question of discrimination *vel non,* a "court must rely on circumstantial evidence of employer motivation in employment discrimination." *Hearn v. R.R. Donnelly & Sons Co.,* 739 F.2d 304, 306 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1214, 84 L.Ed. 356 (1985). A district court may not require a plaintiff to submit direct evidence of discriminatory intent. *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714 at n. 3, 103 S.Ct. 1478, 1481 at n. 3, 75 L.Ed.2d 403 (*quoting International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977)). The plaintiff may succeed in her burden of persuasion either directly by persuading the Court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. In *McDonnell Douglas,* the United States Supreme Court outlined plaintiffs' initial burden in Title VII cases of establishing a prima facie case of discrimination on a disparate treatment theory. The Court stated that a plaintiff establishes a prima facie case by showing that she was a member of a protected class, that she applied for a job for which she was qualified, that she was rejected despite her qualifications, and that her employer continued to seek applicants of the plaintiff's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824.

■ After a district court has heard all of the evidence in a case, it becomes irrelevant whether the plaintiff has actually established the *McDonnell-Burdine* prima facie case of discrimination. *Aikens,* 460 U.S. at 714, 103 S.Ct. at 1481; *Suson v. Zenith Radio Corp.,* 763 F.2d 304, 307 (7th Cir.1985). However, the criteria of a prima facie case of discrimination may raise an inference of discrimination because the employer's acts, if unexplained, are likely the result of discriminatory intent. *Jayasinghe v. Bethlehem Steel,* 760 F.2d 132, 135 (7th Cir.1985) (*quoting Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 and *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). Thus, besides serving as a "useful barrier ... to screen out unsubstantiated discrimination charges," evidence of a prima facie case of discrimination "offers the plaintiff an opportunity to prove discriminatory intent indirectly." This indirect method of proof is sometimes crucial to the plaintiff faced with the difficulty of proving discriminatory intent where "the employer is too sophisticated to implicate itself or where the discrimination is subtle or unconscious." *Jayasinghe,* 760 F.2d at 135; *LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409–10 (7th Cir.1984).

■ Thus, whether the plaintiff proved her prima facie case is not relevant after the full trial on the merits but, facts regarding the plaintiff's qualifications or the qualifications of persons who replaced her may be relevant on the ultimate issue of whether to believe the plaintiff's or the defendant's explanation of the motive for refusing to rehire her. *Jayasinghe,* 760 F.2d at 136.

■ George Boby had complete responsibility over hiring and firing City of Lake Station employees. His trial testimony revealed that he did not know of any reprimands or complaints about Robinson's previous work for the defendant. Despite this defendant asserts in its Amended Suggested Findings and Conclusions that the defendant's reason for refusing to rehire Robinson was that she was not reliable, that she arrived at work late and left early,

that she did not keep accurate records at the city dump, and that she practiced her religion on the job. These *post hoc* explanations are unworthy of credence because Boby testified that he knew of no reason for dissatisfaction with Robinson's job performance at the time he refused to rehire her in May of 1980. When asked why he did not rehire Robinson in May of 1980 for the yard attendant position she previously held, Boby expressed no dissatisfaction with her previous performance as yard attendant. He admitted that he could have rehired her for that position but he "never thought of it that way." There, the putative deficiencies which the defendant uncovered after this suit was filed could not have motivated Boby's decision not to recall her.

 Somewhat more credible is Boby's explanation that he did not believe Robinson was as qualified as the male applicants for the positions which became open after Robinson's final lay-off. The evidence at trial revealed that Robinson's objective qualifications were inferior to those of the male employees Boby hired for general labor positions. These general laborers, while typically assigned to one department, were often called upon to fill temporary vacancies in the other city departments. This required the general laborers to perform engine and body work on city vehicles, to perform non-major electrical repairs at city facilities, and to perform other mechanical duties. The males Boby hired for these positions possessed skills, experience or aptitudes that Robinson lacked. Defendant's refusal to hire Robinson for the general laborer openings resulted from her relative lack of qualifications. The relative qualifications of applicants are legitimate hiring criteria. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977). "A desire to hire the more experienced or better qualified applicant is a non-discriminatory, legitimate, and common reason on which to base a hiring decision." *Holder v. Old Ben Coal Co.*, 618 F.2d 1198, 1202 (7th Cir.1980) (*citing Pond v. Braniff Airways,*

*Inc.*, 500 F.2d 161, 165 (5th Cir.1974)). Thus, Boby's refusal to hire Robinson for the general laborer openings were based on the legitimate business interest of the city and were not the result of discrimination.

The decision not to hire Robinson for the job opening for the position of yard attendant at the city dump or for the garbage truck packer stands in a somewhat different posture. The person who was ultimately hired for the position of yard attendant, Ray Wright, was a 600-pound male with severely limited personal mobility. The job of yard attendant required an employee to supervise the dump, prohibit non-residents from dumping at the Lake Station dump, prevent people from dumping raw sewage, help refuel city vehicles and keep records of city fuel consumption. Mobility of an applicant would certainly be an important qualification for such a position.

 It is not a court's duty to determine the validity of the defendant's business decision as long as the decision is made in good faith. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1215 n. 6 (7th Cir.1985). However, the defendant's assertion that Robinson's poor work habits motivated its decision not to rehire her and Boby's inability to offer a better explanation demonstrate a clear lack of good faith. Thus, the decision to hire Wright rather than Robinson must be carefully scrutinized.

Robinson had previously performed the duties of yard attendant and Boby knew of no complaints or dissatisfaction with Robinson's performance when he decided to hire Wright for the yard attendant position in the spring of 1981. But, when faced with a choice between a female applicant with previous experience and a clear employment record and male applicant with no experience and lesser qualifications, Boby chose the male applicant. As stated above, the defendant's *post hoc* explanation fails to justify this decision and the Court cannot discern any other legitimate, non-discriminatory reason for such a decision.

 Thus, the defendant's asserted business reasons for refusing to hire Robinson for the yard attendant position are incredible and the Court concludes that the defendant's decision was the result of unlawful gender discrimination. An employment decision need not arise from malice or ill-will in order to be discriminatory. Sex discrimination results whenever the employer deliberately offers to females fewer or less valuable opportunities than those offered to males. *Furnco Cost. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *DeLesstine v. Fort Wayne State Hospital and Training Center,* 682 F.2d 130 (7th Cir.1982), *cert. denied* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511; *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194 (7th Cir.1971). The Court concludes that the defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) by refusing to hire Karen Robinson for the position of yard attendant because of her gender.

 The defendant's refusal to hire Robinson for one of the garbage packer positions was likewise the result of sex discrimination. The garbage packer positions were filled by males despite Robinson's expressed wilingness to work as a garbage packer. With one exception, each of the males who was hired as a garbage packer was at least six feet tall and weighed close to 200 pounds. Because the packers were required to do extensive lifting to load the contents of garbage cans onto the truck, change the oversized tires of the garbage truck, and occasionally push the truck out of mud or snow, physical size was a legitimate hiring criterion for the garbage packer positions. Physical size, as one measure of strength, may be bona fide job-related quality, and the plaintiff presented no evidence whatsoever that the height and weight requirements that Boby sometimes used as a gauge in hiring garbage packers had a discriminatory impact on female applicants. *See Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) (Female applicant presented sufficient evidence that statutory height and weight requirements had

discriminatory impact.) Thus Boby's conclusion that the taller and heavier male applicants he hired could perform the garbage packer job better than the plaintiff is credible and is a legitimate, non-discriminatory reason for hiring these males rather than hiring Robinson. However, even when height and weight are bona fide, job-related qualities, the United States Supreme Court has expressed a preference for the use of employment tests that measure strength directly. *Dothard,* 433 U.S. at 332, 97 S.Ct. at 1853 (*citing EEOC Guidelines on Employee Selection Procedures,* 29 C.F.R. § 1607 (1976)); *Washington v. Davis,* 426 U.S. 229, 246–47, 96 S.Ct. 2040, 2050–51, 48 L.Ed.2d 597 (1976); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Officers for Justice v. Civil Service Comm'n,* 395 F.Supp. 378 (N.D.Cal.1975). Despite his failure to heed this preference, however, Boby decided to hire the larger male applicants on the basis of legitimate, objective, job related criteria and that decision was not in violation of Title VII.

On the other hand, the Court can discern no similar nondiscriminatory reason for Boby's decision to hire a smaller male instead of hiring Robinson. Boby hired Jeff Brown on June 27, 1981 at a time when he knew Karen Robinson wanted to be recalled and after she had expressed to Boby her willingness to work as a garbage packer. Boby testified that he knew of no skills or qualifications to indicate that Brown could adequately perform the garbage packer job.

Boby testified that a woman is capable of working on the back of a garbage truck but that he had concerns about hiring women for that job because he was "of the old school" in which men have "kept [their] women on pedestals" and he "just [doesn't] believe women belong back there" because of the dangerous and unsanitary conditions. He then stated that he did not believe women are capable of lifting garbage cans filled with winter ice and water and gave his stereotyped opinion that a man is more physically able than a comparably-

sized woman. He conceded that he conducted no tests or inquiries of an applicant's lifting ability before making his hiring decision.

■■■ Despite Boby's misplaced benevolence toward women, Title VII prohibits hiring decisions that are based on stereotyped characterizations of the sexes. *Dothard*, 433 U.S. at 333, 97 S.Ct. at 1853; *Bowe v. Colgate Palmolive Co.*, 416 F.2d 711 (7th Cir.1969), *on remand*, 489 F.2d 896.

■■■ Thus, Boby had no right to decide that a female job applicant was more properly "kept" on a pedestal than on the back of a garbage truck. Myths and purely habitual assumptions about a woman's inability to perform certain kinds of work are no longer acceptable reasons for refusing to employ qualified individuals. *City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). "In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Sprogis v. United Airlines, Inc.*, 444 F.2d 1194, 1198 (7th Cir.1971). Moreover, Title VII does not allow for one hiring policy for women and another for men. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). If Boby had size requirements by which he gauged the ability of female applicants he could not permissibly waive those size requirements for male applicants as he did in the case at bar. By refusing Robinson for the garbage truck packer position, the City of Lake Station intentionally engaged in discrimintory conduct in violation of Title VII.

### III.

#### Remedies

■■■ Title 42 U.S.C. § 2000e–5(g) provides that:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay, ... or any other equitable relief as the court seems appropriate.

Title VII envisions a "make whole" remedy to ensure the total eradication of present discrimination and redress the adverse consequences of past unlawful conduct. *Sprogis*, 444 F.2d at 1202; *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). The plaintiff bears the burden of proving damages caused by the discriminatory conduct. *Horn v. Duke Homes*, 755 F.2d 599, 600 (7th Cir.1985). Robinson has requested back pay, reinstatement, damages for pain and suffering, reasonable attorney fees, and costs.

#### Backpay

■■■ A Title VII plaintiff is generally entitled to lost earnings or back pay as an equitable remedial measure. *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir.1976). Back pay is measured as the difference "between actual earnings for the period and those she would have earned absent the discrimination by the defendant." *Horn v. Duke Homes*, 755 F.2d at 606 (quoting *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979)).

■■■ In calculating back pay, a court must resolve against the employer any ambiguities in what the employee "would have earned" but for the discrimination. *Horn v. Duke Homes*, 755 F.2d at 607. To implement the full remedial purpose of Title VII, the Court of Appeals for this Circuit has required that persons who were discriminatorily laid off should receive back pay according to the "highest rate of pay for such jobs they would have bid on and qualified for" if a non-discrimnatory lay-off scheme had existed. *Bowe v. Colgate-Palmolive*, 416 F.2d at 721.

In the case at bar, Karen Robinson requested "any available position" after her final lay-off. She specifically stated that she would accept work on the back of a garbage truck. The City first discriminated against Robinson in April of 1981 when, without plausible explanation, it hired a less qualified male to work as yard attendant. The City also discriminated against Robinson by hiring a less qualified male as a garbage truck packer instead of her.

Absent discrimination by the City of Lake Station, Robinson would have been rehired as a yard attendant when Ray Wright was hired in April 1, 1981 or as a garbage truck packer when Jeffery Brown was hired on June 29, 1981. Therefore, the award of back pay from April 1, 1981 to June 29, 1981 shall be calculated at the rate of pay for yard attendants. For the period following June 29, 1981, the back pay award shall be calculated according to garbage truck packers' wages.

The yard attendant position was funded under the Sanitation Department. In 1981, the yard attendant received $4.28 per hour. For the 13 weeks between April 1, 1981 and June 29, 1981, Robinson would have received $2,225.60, assuming 40 hour weeks.

The garbage truck packers were classified as Sanitation Department Laborers and were paid $5.46 per hour in 1981; $5.73 per hour in 1982 and 1983; and $6.23 per hour in 1984 and 1985. Although one of the plaintiff's exhibits suggests that garbage truck packers are receiving $7.24 per hour in 1986, she has presented no evidence to support that assertion except the exhibit that summarizes her claim for lost wages. (Plaintiff's Exhibit T). At trial, the defendant objected to the admission of Exhibit T as substantive evidence of the plaintiff's lost wages. The Court then admitted it as a limited aid to the court and not as substantive evidence of the plaintiff's lost wages.

Contrary to the 1986 wage rate in Exhibit T, City Salary Ordinance 85–19 (Group Exhibit O) provides that Sanitation Laborers shall receive $6.45 per hour for 1986.

None of the Sanitation Laborers who testified were questioned about their current wages. Thus, the Court must depend on City Salary Ordinance 85–19 as it is the only substantive evidence of 1986 wages for sanitation laborers.

Therefore, the plaintiff's lost wages are calculated as follows:

| | |
|---|---|
| 13 weeks @ $4.25 per hour in 1981 | $ 2,225.60 |
| 27 weeks @ $5.46 per hour in 1981 | 5,896.80 |
| 52 weeks @ $5.73 per hour in 1982 | 11,918.40 |
| 52 weeks @ $5.73 per hour in 1983 | 11,918.40 |
| 52 weeks @ $6.23 per hour in 1984 | 12,958.40 |
| 52 weeks @ $6.23 per hour in 1985 | 12,958.40 |
| 10 weeks @ $6.45 per hour in 1986 | 2,580.00 |
| Total lost wages | $60,456.00 |

Section 706(g) of Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g).

Once the plaintiff has established the gross amount of back pay due, the burden is on the employer to show that the plaintiff failed to exercise reasonable diligence in finding employment. *Sprogis*, 517 F.2d 387, 392 (7th Cir.1975). Nothing in the record suggests that Robinson did not use reasonable diligence to find other suitable employment or that she otherwise failed to mitigate damages. The plaintiff mitigated damages by earning $911.20 in 1982; $4,065.37 in 1983, and $7,144.56 in 1984. These earnings reduce her lost wages by a total of $12,121.13 for a net back pay award of $48,334.87.

As part of her claim for back pay, Robinson seeks the monetary value of health benefits she would have received absent the discrimination by the defendant. She has failed to present sufficient evidence on the value of these benefits and failed to establish that she would have been entitled to these benefits. The plaintiff bears the burden of proving damages caused by the discriminatory conduct. *Horn v. Duke Homes*, 755 F.2d at 600. Because the plaintiff failed to meet this

burden on the claim for the value of health benefits, that claim is DENIED.

### Reinstatement

 Reinstatement is expressly allowed as a remedy for discrimination under Title VII. 42 U.S.C. § 2000e–5(g). The scope of the reinstatement remedy rests within the sound discretion of the district court. *Henry v. Lennox Industries,* 768 F.2d 746 (6th Cir.1985). A victim of discrimination is normally entitled either to reinstatement or front pay.

 Because the position of yard attendant no longer exists in the City of Lake Station, reinstatement to that position is not feasible. Requiring the defendant to immediately hire Robinson as a garbage packer, as a practical matter, would either displace or diminish the available hours for those employees presently working as garbage packers. The equitable balance between statutory rights of victims and contractual rights of non-victim employees is a determination that the Supreme Court has committed to the sound equitable discretion of the trial courts. *International Brotherhood of Teamsters,* 431 U.S. at 374–75, 97 S.Ct. at 1874–75. This equitable balance can be struck by requiring the defendant to hire Karen Robinson for the next available garbage packer position in the City of Lake Station and by requiring the city to place Robinson in the position of seniority she would occupy if she had been working continuously since April 1, 1981.

### Pain and Suffering

 Title VII authorizes an award of any equitable remedies the court deems appropriate, but not compensatory or punitive damages. 42 U.S.C. § 2000e–5(g); *Patzer v. Board of Regents of University of Wisconsin,* 763 F.2d 851 (7th Cir.1985) (*citing Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363–64 (11th Cir.1982)). Damages for "pain and suffering" are compensatory and thus are not recoverable under Title VII. *See, e.g., Pearson v. Western Electric Co.,* 542 F.2d 1150, 1151 (10th Cir.

1976). Therefore, plaintiff's claim for damages for pain and suffering is DENIED.

### Costs and Fees

 Section 42 U.S.C. § 2000e–5(k) provides that the court, in Title VII actions, "may allow the prevailing party ... reasonable attorney's fee as part of the costs." Absent special circumstances, prevailing plaintiffs are entitled to reasonable compensation for attorney's fees. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975). The Court finds that costs and attorney fees should be assessed in this action. The primary considerations relevant to computing reasonable attorney fees include the time reasonably spent and the billing rate, but reasonableness of fees also depends on the extent of counsel's success and the complexity of the case. *Waters v. Wisconsin Steel Works of International Harvester Co.,* 502 F.2d 1309, 1322 (7th Cir.1974) (citing Disciplinary Rule 2–106, ABA Code of Professional Responsibility).

The plaintiff's attorney has petitioned for $13,236 in fees which is computed at a rate of $80 per hour for out-of-court hours and $100 per hour for trial work and work in direct preparation for trial. She has submitted a detailed compilation of the services she provided. She also attests that $634.39 were spent as costs of bringing this action. The Court finds that the plaintiff's attorney's petition is reasonable and hereby awards $13,870.39 as costs and fees.

### CONCLUSION

The plaintiff has established by a preponderance of the evidence that defendant's refusal to hire her for openings in the yard attendant and garbage packer positions were acts of discrimination. Accordingly, the plaintiff has shown a violation of Title VII.

To remedy the violation the Court finds that the plaintiff is entitled to back pay,

reinstatement, costs and attorney fees as set forth in this Order. The Court hereby ORDERS the defendant

(1) to remit $48,334.87 as back pay;

(2) to hire the plaintiff for the next available garbage packer position;

(3) to place Robinson, upon reinstatement, in the position of seniority she would occupy if she had been working continuously since April, 1981; and

(4) to pay attorney fees and costs of $13,870.39.