Sandra D. ZOWAYYED, Plaintiff,

v.

LOWEN COMPANY, INC., Defendant.

No. 89–1235–K.

United States District Court,
D. Kansas.

April 17, 1990.

James Phillips, Jr., Phillips & Phillips, Wichita, Kan., for plaintiff.

Robert Overman, Martin, Churchill, Overman, Hill & Cole, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

### PATRICK F. KELLY, District Judge.

The plaintiff, Sandra Zowayyed, has filed the present action against her former employer, Lowen Company, Inc., alleging sexual harassment and retaliatory discharge in violation of federal civil rights statutes. The defendant has now moved for summary judgment against the plaintiff's claim, while the plaintiff has filed a demand for a jury trial of her claims.

These motions were heard by the court on April 13, 1990, where the court announced its rulings on the respective motions. Consistent with the statements of the court at the hearing, and for the reasons discussed herein, the plaintiff's demand for jury trial is denied, and the defendant's motion for summary judgment is granted in part and denied in part.

### Findings of Fact

Defendant Lowen Company, Inc. is a corporation located in Hutchinson, Kansas, and is engaged in the national business of commercial silk-screen printing of signs and decals. The company was originally founded in 1950 by Mike Lowen when he was near the age of 25. After being absent from the company for several years, Lowen returned as president of the company in April, 1986, when the previous president resigned. Lowen's daughter, Ann Brown, also worked at the company.

From mid–1986 until early 1987, Brown's responsibilities included full management of the general office staff, overseeing the daily operations of the office, and the application of corporate policies to the office staff. Although Lowen at this time was officially the president of the company, Brown did not report to Lowen. The corporate comptroller and other supervisors in the office, including the switchboard supervisor, Elaine Blevins, reported to Brown.

Plaintiff Sandra Zowayyed was employed by Manpower, Inc. of Hutchinson, and worked on a temporary basis at Lowen Company in August and September, 1986. On September 17, 1986, Blevins hired Zowayyed as a receptionist for the general office area at Lowen Company. Zowayyed's duties included answering the telephone, greeting persons, and occasionally working for other departments. Serving as a receptionist, Zowayyed received telephone calls for approximately 35 to 50 employees working in the office area. Mike Lowen was not involved in the decision to hire Zowayyed.

While she was employed at the company, Zowayyed received a copy of the company's employee handbook. Zowayyed has testified that she read the handbook "from cover to cover." The handbook contains two pages devoted to the company's sexual harassment policy. A statement of the policy was also posted on a bulletin board near the time clock in the company's break area, and on at least two other bulletin boards in the company's offices.

Zowayyed and Blevins generally worked side-by-side in the reception and switchboard area of the company, which was located in a hallway adjacent to the front lobby. Zowayyed has testified that except for the time in which Blevins worked on redoing the file system, Blevins was with her at the front of the office almost all the time. Blevins has testified that 90 to 95 percent of her daily work was performed in the switchboard area.

Zowayyed has testified that she enjoyed working for Lowen Company. The defendant cites the deposition testimony of Blevins stating that Zowayyed was a "friendly person." Blevins testified that in Zowayyed's work as receptionist, she flirted over the telephone with salesmen and customers. The defendant also alleges that Zowayyed, while working at Lowen Company, "had dates with fellow male employees."

Zowayyed, on the other hand, flatly denies flirting with anyone at Lowen Company. There is no record to support the

defendant's assertion that Zowayyed regularly dated fellow employees. According to Zowayyed's testimony, during her time at Lowen Company she had only one date with another employee, and that was a lunch date.

The parties disagree strongly as to the central facts underlying the plaintiff's allegations. Zowayyed has testified that in September or October of 1986, Mike Lowen laid a piece of paper in front of her. Lowen had written on the paper, "You have very playful eyes. Do you play?" Zowayyed said nothing, removed the note, and walked out of the office. The next day, Lowen came to Zowayyed's work area and said, "If you don't bait the hook, you can't catch the fish."

From September through December, 1986, when Lowen walked by Zowayyed, he would try to brush up against her. Zowayyed has testified that on one occasion, when Lowen was walking behind her work area, he nudged her with his hip or his elbow. On another occasion, when Lowen was walking behind her work area, he grabbed Zowayyed's shoulder. Lowen tried to brush up against Zowayyed at least twice a week. Zowayyed has stated that almost every day Lowen made suggestive facial expressions. She describes Lowen as making "goo goo eyes," in which he would stare at her out of the corner of his eyes. Zowayyed also states that on one occasion Lowen told her a sexist joke.

Zowayyed acknowledges that Lowen never asked her to socialize with him. He never asked her to go anywhere with him, nor did he ask her to spend any time alone with him in his office.

The defendant denies Zowayyed's claims, relying on the deposition testimony of Lowen, in which he denies engaging in any of the claimed suggestive activities. In addition, the defendant cites the deposition testimony of Blevins. Blevins has generally testified that she saw no suggestive acts by Lowen. In addition, she has indicated that Zowayyed was not intimidated by any actions of Lowen.

Blevins testified that in October, 1986, she returned to work after lunch and found Zowayyed laughing and giggling. Zowayyed told Blevins that Lowen had given her a note that said, "You have playful eyes. Do you play?" According to Blevins, Zowayyed did not appear upset, but seemed to take it as a joke. On a subsequent occasion, Zowayyed told Blevins that Lowen had brushed up against her. Again, Zowayyed did not appear to Blevins to be upset, and instead took Lowen's actions as a source of amusement.

Blevins has testified that Zowayyed told her in late 1986 that if they needed anything, all she had to do was wink at Lowen. She also told Blevins that she would get a raise in December, 1986 because of "how tight she was with Mike Lowen." At around the same time, Zowayyed told Blevins, in reference to a new couch in Lowen's office, that it was there for Zowayyed to take care of him. Blevins has testified that Zowayyed told her that she wouldn't mind going to bed with Lowen if she could get past his nose hairs. According to Blevins, Zowayyed also said that she would be "the next lady to bring Mike his lunch and driving his fancy cars, and all she had to do was just play her cards right and she would be the next person to do these things."

Zowayyed denies that she bragged about her relationship with Lowen. In her affidavit attached to her response to the defendant's motion for summary judgment, Zowayyed states that when she spoke with Blevins about Lowen she was demonstrably upset over the matter. Zowayyed denies ever telling anyone that all she had to do was to wink at Lowen to get whatever she wanted, and denies that she ever indicated a willingness to sleep with Lowen.

The defendant cites testimony by Zowayyed in her deposition that both she and Blevins joked and laughed about Lowen's actions. Zowayyed also acknowledged in her deposition that she made comments to Blevins and another person, Dennis McQuabe, that she could obtain raises for them because "I got him [Lowen] wrapped around my little finger. I'll go ask him and you'll get your raise."

However, Zowayyed contends that Blevins, not Zowayyed, initiated whatever joking occurred. Zowayyed testified in her deposition that she made comments such as having Lowen wrapped around her little finger or being able to wink her playful eyes in a facetious sense only. While Zowayyed does acknowledge in her deposition that she made such statements, she also clearly states in her deposition that she did not consider the matter amusing, but made the statements as a means of relieving the tension created by Lowen's persistent suggestive actions. Zowayyed states in her affidavit that, far from finding the matter amusing, Lowen's actions caused her significant tension, fear, and embarrassment.

The parties also disagree as to the events occurring at the time of Zowayyed's termination. According to the deposition testimony of Blevins, she told Zowayyed in the fall of 1986 that she should cease her comments relating to Lowen. Blevins testified that Zowayyed merely laughed in response. Blevins testified that by January, 1987, she had "just had enough" of Zowayyed's comments about Lowen, and reported the comments to Ann Brown.

On Friday, January 23, 1987, Ann Brown called a meeting in the Lowen Company conference room. Brown, Lowen, Blevins, Zowayyed, and Michelle Miller attended the meeting. According to the testimony of Lowen and Blevins, Zowayyed admitted making statements that she had Lowen wrapped around her finger, that the couch in Lowen's office was for her use, and that all she had to do was blink at Lowen to get her way. According to Brown, she told Zowayyed that if she would take responsibility for what she had said, they would put the matter behind them and return to work.

Blevins testified that Zowayyed became upset, and asked to take off the rest of the day and the following Monday. When Zowayyed returned to work on Tuesday, Brown and Blevins met with her in the conference room. Brown told Zowayyed that she was being terminated for refusing to take responsibility for her actions.

Zowayyed states in her deposition that during the meeting in the conference room she denied making some of these alleged statements. As to the other statements, she contends that they were being taken out of context. Zowayyed told the persons at the meeting that the statements were not meant to be literal, stating, "No, I didn't say it like that. That's not what I meant." Zowayyed testified that she tried to discuss Lowen's advances at the meeting, but was not permitted to talk about the subject. According to Zowayyed, Brown became very upset when she raised the issue and refused to listen to her, saying, "I'm not going to listen to this. It's over, its done. Go back to work and put this behind you."

## Conclusions of Law

■ The determination of whether a party is entitled under the Seventh Amendment to receive a trial by jury is controlled by the nature of the claim asserted. If the claim is essentially equitable rather than legal, there is no constitutional right to a trial by jury. *Granfinanciera v. Nordberg*, —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

■ The plaintiff generally argues that the recent decisions of the Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), indicate the adoption of new rules relating to Title VII litigation, rules which would support the right to a jury trial in such cases.

In *Meritor*, the Court held that it was not necessary for the plaintiff in a Title VII action to prove that the discrimination had an adverse economic effect on her employment. 477 U.S. at 66–67, 106 S.Ct. at 2405. The Court found that a violation of Title VII also arises when sex-based discrimination creates "a hostile or abusive work environment." 477 U.S. at 66, 106 S.Ct. at 2405. In *Patterson*, the Court held that 42 U.S.C. § 1981 does not prohibit racial

harassment during the course of a plaintiff's employment, indicating that such harassment is actionable only under Title VII. 491 U.S. at ——, 109 S.Ct. at 2374, 105 L.Ed.2d at 153 (citing *Meritor*).

But while the Supreme Court has indicated that a violation of Title VII may arise even though the damages suffered are non-economic in nature, this does not alter the nature of the remedies available under Title VII. Under 42 U.S.C. § 2000e–5(g), a plaintiff who successfully demonstrates a violation of Title VII is entitled to remedies which are primarily equitable: injunctive relief prohibiting further acts of discrimination, reinstatement, and back pay. The Supreme Court has recognized that the remedies accorded plaintiffs under Title VII are equitable in nature. In *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Court discussed the remedies available under Title VII, concluding that

> The Act provides for injunctive relief, specifically including backpay relief. The majority of the federal courts have held that the Act does not allow a court to award general or punitive damages. The Act expressly allows the prevailing party to recover his attorney's fees, and, in some cases, provides that a district court may appoint counsel for a plaintiff. Because *the Act expressly authorizes only equitable remedies*, the courts have consistently held that neither party has a right to a jury trial.

442 U.S. at 374–75, 99 S.Ct. at 2350 (emphasis added, footnotes omitted).

The Tenth Circuit, following *Novotny*, has also refused to find a right to a jury trial for claims arising under Title VII. In *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir.1979), the defendant argued on appeal that it was entitled to a jury trial of the Title VII claims against it. Citing its earlier decision in *Pearson v. Western Electric Co.*, 542 F.2d 1150 (10th Cir.1976), the *Lee Way* court found that the plaintiffs' claim for back pay under Title VII "is regarded as equitable relief and as an effort to restore the injured persons to their rightful place in the economic system." 625 F.2d at 931. The court held that the defendant's argument that it was entitled to a trial of the matter by jury was therefore invalid, noting the recent decision of the Supreme Court in *Novotny*, which the Tenth Circuit interpreted as holding that "no such right exists in cases of this nature." *Id.*, at 940. The equitable nature of the relief sought by the plaintiffs under Title VII meant that a jury trial was not a matter of right. *Id.*

Judge Rodgers previously had reached the same conclusion in *Brown v. Frito-Lay, Inc.*, 15 FEP Cases (BNA) 1055 (D.Kan.1976), finding that the plaintiff in a Title VII sex discrimination case did not have a right to a jury trial. Because such a claim was not recognized at common law, and "the statute speaks of awarding equitable relief," Judge Rodgers ruled that the plaintiff was not constitutionally entitled to a jury trial of the matter. 15 FEP Cases at 1059.

The rule that no right to trial by jury exists under Title VII has been followed by the near unanimous weight of authority. *See North v. Madison Area Ass'n for Retarded Citizens*, 844 F.2d 401, 403 n. 2 (7th Cir.1988); *Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928 (11th Cir.), *reh'g denied*, 705 F.2d 471, *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983); *Harmon v. May Broadcasting Co.*, 583 F.2d 410 (8th Cir. 1978); *Slack v. Havens*, 522 F.2d 1091 (9th Cir.1975); *Johnson v. Georgia Highway Express*, 417 F.2d 1122 (5th Cir.1969); *O'Brien v. King World Productions*, 669 F.Supp. 639 (S.D.N.Y.1987); *Snell v. Suffolk County*, 611 F.Supp. 521 (E.D.N.Y. 1985), *aff'd*, 782 F.2d 1094 (2d Cir.1986); *Mitchell v. Alex Foods, Inc.*, 572 F.Supp. 825 (N.D.Ga.1983); *Cox v. Athena Cablevision*, 558 F.Supp. 258 (E.D.Tenn.1982); *Daniels v. Lord & Taylor*, 542 F.Supp. 68 (N.D.Ill.1982); *Mitchell v. Visser*, 529 F.Supp. 1034 (D.Kan.1981); *but see Beesley v. Hartford Fire Ins. Co.*, 717 F.Supp. 781 (N.D.Ala.1989). Even among the most recent decisions, the remedies provided under Title VII are viewed as equitable in nature. *See Manders v. Oklahoma ex rel. Dep't of*

*Mental Health,* 875 F.2d 263 (10th Cir. 1989); *Johnson v. United States Elevator Corp.,* 723 F.Supp. 1344 (E.D.Mo.1989); *Hunter · v. Countryside Ass'n For the Handicapped,* 710 F.Supp. 233 (N.D.Ill. 1989).

The view that cases arising under Title VII do not require trial by jury also receives repeated support in other decisions of the Supreme Court. In *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), the Court addressed the question of the existence of a right to a jury trial in cases arising under § 15(c) of the Age Discrimination in Employment Act, 29 U.S.C. § 633a. In reaching this conclusion, the Court pointed out that the enforcement scheme underlying § 15(c) was modeled on Title VII, in contrast with other provisions of the ADEA which were based on the enforcement scheme of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* "And, of course," the Court stated, "there is no right to trial by jury in cases arising under Title VII." 453 U.S. at 164, 101 S.Ct. at 2703.

The Court's decision in *Patterson* provides further evidence that a right to a jury trial does not exist under Title VII. Justice Kennedy, writing for the Court, stressed the separate nature of the remedies provided under 42 U.S.C. § 1981 and Title VII, noting that, "[f]or instance, a plaintiff in a Title VII action is limited to a recovery of backpay, whereas under § 1981 a plaintiff may be entitled to plenary compensatory damages, as well as punitive damages in an appropriate case." 491 U.S. at ——, n. 4, 109 S.Ct. at 2375 n. 4, 105 L.Ed.2d at 154 n. 4.

Justice Brennan, dissenting with the conclusion of the Court in *Patterson,* also compared the rights of plaintiffs under § 1981 and under Title VII:

> Moreover, a § 1981 plaintiff is not limited to recovering backpay: she may also obtain damages, including punitive damages in an appropriate case. Other differences between the two statutes include the right to a jury trial under § 1981, but not Title VII; a different statute of limitations in § 1981; and the availability under Title VII, but not § 1981, of administrative machinery designed to provide assistance in investigation and conciliation.

491 U.S. at ——, 109 S.Ct. at 2391, 105 L.Ed.2d at 173 (Brennan, J., dissenting) (citations omitted).

The Court's decisions in *Patterson* and *Meritor Savings* recognize that a Title VII action can be brought when the plaintiff has been subject to a hostile or abusive work environment, even though she may have suffered no direct economic injury. However, while these decisions broadened the circumstances under which a Title VII action may be brought, they do not alter the remedies available to the plaintiff under 42 U.S.C. § 2000e–5(g), which remain essentially equitable in nature. Even after *Patterson,* a successful Title VII plaintiff is entitled under the same remedies: injunctive relief, reinstatement, and back pay. These remedies are equitable in nature and therefore do not entitle the plaintiff to a right to trial by jury.

The plaintiff's argument is directly inconsistent with the expressed opinions of the Supreme Court on the issue, and with the rule in the Tenth Circuit. *See Manders v. Oklahoma ex rel. Dep't of Mental Health,* 875 F.2d 263 (1989); *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918 (10th Cir.1979); *Pearson v. Western Electric Co.,* 542 F.2d 1150 (10th Cir.1976). The plaintiff generally dismisses statements by the Supreme Court that there is no right to a jury trial under Title VII as dicta. This is simply incorrect. In *Lehman,* for example, while the existence of a right to jury trial under Title VII was not the immediate issue before the court, the subject formed a natural, necessary, and essential part of the Court's discussion of the right to a jury trial under § 15 of the ADEA, and should not be ignored as mere dicta.

The Court's decisions in *Patterson* and *Meritor Savings* reflect no change in the previous position of the Court that an action under Title VII is essentially equitable in nature, and therefore, parties to such cases enjoy no right to a trial by jury.

This position has been consistently recognized by the Supreme Court in its opinions in *Novotny* and *Lehman*, and in Justice Brennan's dissent to *Patterson*. This position is also followed by the Tenth Circuit and by virtually every other federal court to consider the issue. Because the plaintiff has failed to demonstrate why this court should abandon a rule established by so strong a body of precedent, her current demand for a trial by jury is hereby denied.

There are three main issues raised by the defendant's motion for summary judgment: (1) the type of remedies damages available to the plaintiff; (2) whether there is sufficient evidence to support a sexual harassment claim under Title VII; and (3) whether there is sufficient evidence to support a retaliatory discharge claim under 42 U.S.C. § 2000e–2(a)(1) and (2), and 2000e–3(a).

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505,

2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The first issue raised in the defendant's motion for summary judgment is closely tied to the jury trial issue discussed in the previous memo. As with her demand for a jury trial, the plaintiff contends that the Supreme Court has altered the traditional rules relating to Title VII actions. After the Court's decisions in *Meritor Savings* and *Patterson*, the plaintiff contends that damages for mental anguish, embarrassment, humiliation, anger, and hurt are authorized in actions arising under Title VII actions.

The plaintiff's argument must be rejected for the same reasons that her request for jury trial must be denied. The Supreme Court may have broadened the scope of the Title VII sexual discrimination cause of action in the cases cited, but it did not alter the nature of the available remedies. In *Meritor Savings*, the Court recognized that a Title VII plaintiff did not have to prove that the sexual harassment resulted in economic damage in the form of termination, reduction in grade, or a failure to promote. It was enough, the Court held, if the plaintiff could demonstrate that she was subjected to a hostile and abusive work environment due to the sexual harassment.

But the Court's holdings in *Meritor Savings* and *Patterson* do not alter the remedies available in a successful Title VII action. Those remedies remain, by statute, the grant of injunctive relief, reinstatement, and the award of back pay. Thus, a plaintiff who has no economic damages (i.e., unlike in the current case, when the harassment did not result in termination or demotion), but who demonstrates the existence of a hostile work environment, may be entitled to an injunction against a continuation of the harassing conduct. But the Supreme Court has never indicated, explicitly or implicitly, that such a plaintiff is entitled to receive compensatory damages for emotional anguish.

As discussed above, the great majority of courts, including the Tenth Circuit, have rejected the plaintiff's argument, finding that Title VII authorizes only injunctive relief. The plaintiff is not entitled to compensatory damages as the statute is currently written. If she succeeds in the trial of the present matter, her remedies include—and are limited to—reinstatement, the award of back pay, and injunctive relief designed to prevent further harassing activities.

However, applying the rules relating to summary judgment, there is enough evidence in the record before the court to require a trial—to the court—of the plaintiff's claims. The defendant's arguments relating to the sufficiency of the evidence are divided as to the plaintiff's Title VII claims and her retaliatory discharge claims.

■ With regard to the plaintiff's Title VII claim, the defendant argues that the claim must fail because Zowayyed welcomed Lowen's advances. In this context, the defendant relies on a portion of the Supreme Court's opinion in *Meritor Savings,* in which the Court noted that the gravamen of a Title VII sexual harassment claim is that the sexual advances complained of by the plaintiff were unwelcome. 477 U.S. at 68, 106 S.Ct. at 2406. But the Court also recognized in *Meritor Savings* that the determination of whether the alleged sexual advances in a given case were actually unwelcome was normally a matter to be decided at trial. Thus, the Court stated that "the question whether particular conduct was indeed unwelcome presents difficult questions of proof and turns largely on credibility determinations committed to the trier of fact." *Id.*

The defendant's Title VII argument that Zowayyed welcomed Lowen's alleged sexual advances relies mainly upon Blevins' testimony that Zowayyed found the advances amusing. According to Blevins, Zowayyed joked about the advances, and indeed even bragged about them. The defendant also cites portions of Zowayyed's deposition, in which she acknowledges joking with Blevins and making statements that she had Lowen wrapped around her finger.

However, Zowayyed flatly denies that she found Lowen's alleged advances to be humorous. She states that she found the advances to be a source of significant mental pain and anguish. Zowayyed denies ever making many of the statements attributed to her by Blevins. She denies ever expressing a willingness to sleep with Lowen. She denies ever indicating that she could obtain a raise from Lowen simply by winking at him.

Zowayyed also disputes the context of other statements attributed to her. She states that any joking occurred solely at the initiation of Blevins, who refused to take her concerns about Lowen's advances seriously. Zowayyed testified in her deposition that whatever joking occurred, including comments such as having Lowen wrapped around her finger, were intended only facetiously, and not intended literally. According to Zowayyed, such statements were merely a means of relieving the tension created by Lowen's sexual advances.

As the Supreme Court recognized in *Meritor Savings,* the present issue turns on the credibility of the witnesses. The rules relating to summary judgment require that all questions of credibility be resolved in favor of the nonmovant. Because Zowayyed alleges the existence of persistent, continuous, and unwelcome sexual advances which resulted in the creation of a hostile and abusive work environment, the defendant's motion for summary judgment

against Zowayyed's Title VII claim should be denied.

■ With regard to plaintiff Zowayyed's retaliatory discharge claim under 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a), the defendant advances two arguments: (1) that there is no evidence that Zowayyed engaged in any protected activity within the meaning of the statute, and, even if there were, (2) there is no evidence of a causal connection between such activity and Zowayyed's termination.

The defendant argues that there was no protected activity by Zowayyed since she never reported Lowen's alleged conduct to her supervisors. And there is no causal connection, the defendant argues, since Zowayyed was only fired when she refused to take responsibility for her flirtatious and bragging behavior. But these arguments ignore Zowayyed's factual allegations, which under the rules relating to summary judgment must be accepted as true.

Zowayyed affirmatively states that she attempted to complain about Lowen's conduct to Blevins, her immediate supervisor at Lowen Company, Inc. Blevins, however, refused to take Zowayyed's complaints seriously and began to joke about them. Zowayyed has testified that she was afraid to raise the matter with anyone else because she was afraid she would be terminated.

The defendant's argument that there is no causal connection between Zowayyed's complaints and her termination must also be rejected. The defendant, relying on the testimony of Blevins and Brown, argues that Zowayyed was fired when she refused to take responsibility for her actions. But Zowayyed denies engaging in any actions for which she should have taken responsibility. She denies any flirtatious or bragging behavior.

Zowayyed was terminated after Blevins reported Zowayyed's comments about Lowen to Brown, Lowen's daughter. Brown then called an early morning meeting at Lowen Company, in which she asked Zowayyed whether she had made certain statements about Lowen. According to Zowayyed, she was not permitted to place those statements in context and not permitted to state her side of the story. Zowayyed has testified that Brown refused to listen to anything relating to Lowen's suggestive actions which underlay her comments. Instead, Brown simply demanded that Zowayyed take responsibility for the matter, and terminated the meeting. When Zowayyed returned to work the following Tuesday and refused to accept responsibility, she was terminated.

Under the facts presented to the court, there is a distinct possibility that Zowayyed's termination resulted directly from her complaints to Blevins of Lowen's conduct. Such complaints would constitute a protected activity under the civil rights statute, and a termination for engaging in such activity would be actionable thereunder.

IT IS ACCORDINGLY ORDERED this 17 day of April, 1990, that plaintiff's demand for jury trial is hereby denied. IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted as to the plaintiff's claim for compensatory damages for mental distress, and is denied in all other respects.